[ECF No. 64]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DAN DAN CHEN, on behalf of themselves and others similarly situated, et al.,<br><br>**Plaintiffs,**<br><br>v.<br><br>RON HIBACHI GRILL SUPREME BUFFET INC., et al.,<br><br>**Defendants.** | Civil No. 23-2591 (EAP) |

## MEMORANDUM OPINION

This matter comes before the Court upon the Plaintiffs' unopposed Motion for Approval of Settlement, ECF No. 64 ("Pls.' Mot."), seeking approval of a proposed settlement that resolves Plaintiffs' claims for wage-and-hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq*. Defendants have not opposed the motion. The Court has considered the Plaintiffs' submissions, including Plaintiffs' supplemental affidavit in support of their claim for costs. *See* ECF No. 71. The Court also heard oral argument at a settlement hearing on November 19, 2024, pursuant to Federal Rule of Civil Procedure 78(a). For the reasons that follow, and for good cause shown, Plaintiffs' Motion is **GRANTED**, and the settlement is **APPROVED.**

## FACTS AND PROCEDURAL HISTORY

### A. The Underlying Action

This case arises out of Defendant Hibachi Grill & Supreme Buffet's ("Hibachi Grill") employment of Plaintiffs Dan Dan Chen, Yan Zhao, Mei Feng Lin, Xue Ran Huang, and Chujun Zheng ("Plaintiffs"), and others similarly situated. ECF No. 1, Complaint ("Compl."),

Introduction. According to the Complaint, Hibachi Grill claims to be the largest restaurant in Atlantic County offering a wide selection of over two hundred and fifty buffet items of Chinese, Japanese, American, Italian, and Mexican cuisines. *Id.* ¶ 1. Hibachi Grill is open seven days a week from 11:00 a.m. to either 10:00 p.m. or 10:30 p.m. *Id.* Plaintiffs allege that Hibachi Grill and its owners and operators—Defendants He Ping Chen, Qi Yun Chen, and Yun Qin Li (collectively, "Defendants")—hired over twenty employees to operate their buffet restaurant during the relevant time from February 2016 to April 2013. *Id.* ¶ 3.

Plaintiffs allege that they worked as servers and waitresses in Defendants' Mays Landing, New Jersey restaurant. *Id.* ¶ 4. They were hired as "tipped workers," who were compensated only by tips from the restaurant's customers. *Id.* Plaintiffs allege that the Defendants did not pay them wages. *Id.* Waiting staff also worked "a diverse range of untipped 'side works' daily, including washing, slicing, chopping, and preparing food materials; making dumplings, soup, and salad; filling and minding the buffet plate[s]; washing and cleaning dish[es], soda machines, and other dining equipment; cleaning table[s], chair[s], and dining facilities; and cleaning bathroom[s] and toilets." *Id.* ¶ 43. The Complaint further asserts that these "side works" regularly occupied more than two hours of a wait staff's workday. *Id.* ¶ 44.

Plaintiffs also allege that Defendants would take a $10 deduction from each server's daily tips from Sunday to Thursday, and $15 from each server's tips from Friday to Saturday. *Id.* ¶ 46. The Complaint states that Defendants told Plaintiffs that the tips were to be shared with a "busboy," even though all the typical work duties of a busser were carried out by the waiting staff, with no additional person assisting. *Id.* ¶ 47. In addition, during some of the relevant time period, Plaintiffs had no designated mealtime or uninterrupted break time during the workday, despite often working more than ten hours per day. *Id.* ¶¶ 60-61, 68-69, 76-77, 84-85, 92-93.

On May 12, 2023, Plaintiffs filed this suit as a collective action on behalf of themselves and others similarly situated. ECF No. 1, Compl. Plaintiffs assert claims for unpaid minimum wages and overtime wages, and improper retention of tips/gratuities under the New Jersey Wage and Hour Law (Counts I, II, III) and the Fair Labor Standards Act (Count IV, V, VI). Compl. ¶¶ 105-151.

Following extensive discovery, the parties engaged in settlement discussions with the Court throughout September 2024. On September 20, 2024, the parties reached a settlement in principle. Minute Entry, Sept. 20, 2024. Subsequently, the parties executed a Settlement Agreement and Release, which resolves Plaintiffs' individual claims and confirms that they are settling only in their individual capacities. *See* Pl.'s Mot., Affirmation of Ge Qu ("Qu Aff."), Ex. A (Proposed Settlement Agreement). The settlement would resolve and dismiss Plaintiffs' claims.

B. **The Proposed Settlement Agreement**

According to the proposed Settlement Agreement and Release, Defendants have agreed to pay $500,000 ("Settlement Amount") to the five Plaintiffs as compensation for their wage-and-hour claims. Qu Aff., Ex. A, ¶ 1. Defendants will make that payment in eighteen enumerated installments—with the first installment due on December 1, 2024—in exchange for the Plaintiffs' dismissal of their claims. *Id.* ¶¶ 2, 5. The Settlement Agreement provides for the following allocation of the $500,000: $164,833.98 for attorneys' fees, $5,496.42 in costs, and $65,933.92 for distribution to each of the five Plaintiffs. *Id.* In addition, Plaintiffs agree to "waive, discharge and release [Defendants] . . . from any wage-and-hour claims related to Plaintiffs' respective employment with Defendants that were alleged in the Complaint, including, but not limited to, claims arising under the FLSA and NJWHL for unpaid wages, unpaid minimum wages, unpaid overtime wages, prejudgment interest, and attorney fees and costs." *Id.* ¶ 6.

On October 22, 2024, Plaintiffs submitted an unopposed Motion for Settlement of the matter. *See* ECF No. 64. On November 19, 2024**,** the Court held a settlement hearing via Microsoft Teams and heard oral argument from the parties on the record in support of the proposed settlement. *See* ECF No. 69. Following the hearing, Plaintiffs submitted a supplemental declaration in support of their request for costs. *See* ECF No. 71 (Supplemental Declaration of Ge Qu ("Qu Suppl. Decl.")).

## **FAIRNESS OF THE SETTLEMENT**

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 69 (2013)). If employers violate the FLSA's minimum wage and overtime provisions, codified at 29 U.S.C. §§ 206 and 207, employers may be liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Id.* (citing 29 U.S.C. § 216(b)).

Under the "collective action" mechanism set forth in 29 U.S.C. § 216(b), an employee alleging an FLSA violation "may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other 'similarly situated' employees." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242 (3d Cir. 2013) (quoting *Genesis Healthcare*, 569 U.S. at 69). "A suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare*, 569 U.S. at 69. A collective action under the FLSA differs from a class action under Federal Rule of Civil Procedure 23, in that "the mere presence of [collective action] allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016). "Rather, the existence

4

of a collective action depends upon the affirmative participation of opt-in plaintiffs," who must, to pursue their claims, affirmatively choose to join in the collective action by filing a written opt-in notice with the court. *Id.* (citations omitted); *see also* 29 U.S.C. § 216(b) (providing that "[n]o employee shall be a party plaintiff to [a collective] action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

In the Third Circuit, courts have identified two procedures for settling collective FLSA claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) the district court can approve a settlement under 29 U.S.C. § 216(b). *See Morales v. Unique Beginning Caterers LLC*, No. 20-10026, 2021 WL 5864061, at *1 (D.N.J. Dec. 10, 2021) (citations omitted); *see also Fritz v. Terminite, Inc.*, No. 19-15749, 2020 WL 5015508, at *1 (D.N.J. Aug. 25, 2020) ("Although Third Circuit precedent is silent on the matter of judicial approval of FLSA settlements, district courts in this jurisdiction abide by the principle that settlement of FLSA claims under 29 U.S.C. § 216(b) requires court approval." (citations omitted)).

In approving a settlement under 29 U.S.C. § 216(b), a court must determine that "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Brumley v. Camin Cargo Control, Inc.*, Nos. 08-178, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Fritz*, 2020 WL 5015508, at *1 (applying the *Lynn's Food* standard); *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, *et al.*, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (same). Courts generally compartmentalize this analysis into three elements: (1) whether the settlement resolves a bona fide dispute; (2) whether the terms of the agreement are fair and

reasonable to the employees; and (3) whether the terms of the settlement otherwise frustrate the implementation of the FLSA. *Marstellar v. River Supply, Inc.*, No. 22-546, 2022 WL 17627777, at *1 (M.D. Pa. Dec. 13, 2022) (cleaned up); *Wahpoe v. Staffmore LLC*, No. 19-1268, 2020 WL 5554413, at *3 (E.D. Pa. Sept. 16, 2020).

Plaintiffs now seek approval of their Settlement Agreement with Defendants.[1] In analyzing this Settlement Agreement, the Court considers each of the three elements individually.

### A. <u>Bona Fide Dispute</u>

Under the first element, the court must inquire into whether the settlement "'reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley*, 2012 WL 1019337, at *2 (quoting *Lignore v. Hosp. of the Univ. of Pa.*, No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007); citing *Lynn's Food*, 679 F.2d at 1354). "Therefore, the [p]arties are required to provide the [c]ourt with enough information for the [c]ourt to examine the bona fides of the dispute, providing a description of 'the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise.'" *Id.* at *6 (quoting *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

Here, Plaintiffs alleged that Defendants failed to pay them appropriate wages for both regular and overtime hours. Defendants, in turn, denied most of Plaintiffs' facts and disclaimed any liability under any of the alleged causes of action. *See generally* ECF No. 7 (Answer).

---

[1] Plaintiff also asserts claims under the NJWHL, but "court approval of a settlement of those state law claims is not required." *Davis v. Essex Cnty.*, No. 14-1122, 2015 WL 7761062, at *2 n.1 (D.N.J. Dec. 1, 2015) (citation omitted).

Moreover, Defendants contested whether Plaintiffs actually worked any overtime hours, asserted that Plaintiffs' damages calculation was significantly overinflated, and argued that Plaintiffs failed to mitigate any damages. *Id.* The Settlement Agreement reflects a negotiated compromise over these disputed factual issues. For these reasons, the Court finds that the settlement resolves a bona fide dispute between the parties.

### B. Whether the Terms of the Settlement Are Fair and Reasonable to the Employees

Although the Third Circuit has not clearly set forth the appropriate analysis for evaluating the "fairness" of an FLSA settlement, "district courts in this Circuit have utilized the *Girsh* factors established for approving Rule 23 class action settlements," which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Brumley*, 2012 WL 1019337, at *4 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d. Cir. 1975) (cleaned up)).[2] Notably, however, a private FLSA claim settlement does not implicate the same concerns as an FLSA collective action; as such, the *Girsh* factors are not entirely applicable. *See Kraus v. PA Fit II,* LLC, 155 F. Supp. 3d 516, 523-24 n.3 (E.D. Pa. 2016). Thus, "[e]ven though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed settlement is fair and reasonable." *Id.*

---

[2] Although *Girsh* was decided in the class action context, courts have applied these factors in the FLSA context. *See, e.g., Cruz v. JMC Holdings, LTD.*, No. 16-9321, 2019 WL 4745284, at *4 (D.N.J. Sept. 30, 2019) (citing *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 11-3121, 2017 WL 6513344, at *1 (D.N.J. Dec. 19, 2017)).

7

Upon consideration of these factors, the Court finds that the settlement is fair and reasonable.

The first *Girsh* factor "'captures the probable costs, in both time and money, of continued litigation.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001)). The current matter involves five Plaintiffs alleging multiple FLSA violations. At the time of settlement, the parties had engaged in litigation for over a year but had not yet completed depositions or engaged in collective certification motions, dispositive motions, or jury trial preparation. Continued litigation would have likely involved a significant expenditure of additional resources.

The second *Girsh* factor—the reaction of the classes to the settlement—"'attempts to gauge whether members of the class support the settlement.'" *In re Warfarin*, 391 F.3d at 536 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 318 (3d Cir. 1998)). Here, Plaintiffs have all agreed to the settlement, and no other individuals have opted in to the litigation. *See* Qu Aff., Ex. A at 37 (reflecting the individual Plaintiffs' signatures). As such, this factor does not weigh heavily in the analysis.

Pursuant to the third *Girsh* factor—the stage of the proceedings and the amount of discovery completed—courts can determine whether counsel had an "'adequate appreciation of the merits of the case before negotiating.'" *In re Prudential*, 148 F.3d at 319 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)). "[P]ost discovery settlements are more likely to reflect the true value of the claim and be fair." *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999) (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)). At the time of settlement here, the parties engaged in discovery for over a year and thus developed an adequate appreciation of the substantive merits.

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin*, 391 F.3d at 537 (citations omitted). Both factors weigh in favor of settlement approval here. On one hand, given Defendant's numerous defenses both as to liability and damages, a favorable outcome was not guaranteed to the Plaintiffs. On the other hand, there was no indication that Plaintiffs brought this case "in bad faith simply to generate attorneys' fees, or that the case [was] too weak to succeed under most circumstances." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 253 (E.D. Pa. 2011). Ultimately, the settlement provides the certainty of a $500,000 payment without subjecting the Plaintiffs to the risks and delays inherent in trial.

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial" because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action." *In re Warfarin,* 391 F.3d at 537 (alteration in original). As the settlement here pertains only to the five named Plaintiffs, all of whom signed the Settlement Agreement, this factor does not bear on the analysis.

The seventh *Girsh* factor—the ability of the Defendants to withstand a greater judgment— generally only comes into play when "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein*, 761 F. Supp. 2d at 254. This factor did not bear on the settlement negotiations; as such, it does not factor into the Court's analysis of the fairness of the settlement.

The last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the

9

parties would face if the case went to trial." *In re Warfarin*, 391 F.3d at 538 (citation omitted). To assess the reasonableness of a settlement in cases primarily seeking monetary relief, "'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Prudential*, 148 F.3d at 322 (quoting *G.M. Trucks*, 55 F.3d at 806). In conducting this evaluation, the reviewing court "must recognize that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and guard against demanding too large a settlement based on the court's view of the merits of the litigation." *In re Aetna Secs. Litig.*, No. MDL 1219, 2001 WL 20928, at *11 (E.D. Pa. Jan. 4, 2001) (citation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*." *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (cleaned up), *aff'd*, 264 F.3d 201 (3d Cir. 2001).

      Here, Plaintiffs have submitted a damages calculation demonstrating that, if they were to prevail on all of their claims, including minimum wages, overtime, and improper retention of tips and gratuities—exclusive of attorneys' fees, costs, and prejudgment interest—they would be entitled to recovery totaling approximately $1,353,688.30. Qu Aff., Ex. B (Damages Calculation). If, however, Defendants were to succeed on their defense that Plaintiffs only worked thirty hours per week, Plaintiffs' posit that the damages owed to Plaintiffs could potentially be reduced to $430,206. Pls.' Brief in Support of the Motion for Settlement ("Pl.'s Br.") at 5. The gross Settlement of $500,000—representing attorneys' fees of $164,833.98, costs in the amount of

$5,496.42, and distribution to each Plaintiff in the amount of $65,933.92—represents a "reasonable compromise" guaranteeing payment without any further litigation expenses. *Id.* The Court agrees that the settlement amount is reasonable in light of all potential risks. Accordingly, this element favors approval of the settlement.

Having thoroughly reviewed the settlement under the *Girsh* factors, the Court finds that it was negotiated at arm's length and represents a fair, reasonable, and narrowly tailored resolution of Plaintiffs' wage-and-hour claims.

### C. Whether the Terms of the Settlement Otherwise Frustrate the Implementation of the FLSA

Finally, the Court turns to whether approval of the Settlement Agreement will frustrate the purpose of the FLSA. "'The congressional purpose of the FLSA and the public's interest in the transparency of the judicial process'" require district courts to scrutinize FLSA settlements for "the existence of 'side deals' or other conditions not present on the face of the employer's offer, including constraints on employees beyond their full compensation under the FLSA." *Brumley*, 2012 WL 1019337, at *2 (cleaned up). "'In practice, leaving an FLSA settlement to wholly private resolution conduces inevitably to mischief.'" *Id.* (quoting *Dees*, 706 F. Supp. 2d at 1236-37). "'An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount—an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA).'" *Id.* (quoting *Dees*, 706 F. Supp. 2d at 1236-37).

Here, the Settlement Agreement does not contain a confidentiality provision. *See* Qu Aff., Ex. A, Settlement Agreement. Moreover, although it contains a release, that provision appropriately bars only "wage-and-hour claims related to Plaintiffs' respective employment with

11

Defendants that were alleged in the Complaint, including, but not limited to, claims arising under the FLSA and NJWHL for unpaid wages, unpaid minimum wages, unpaid overtime wages, prejudgment interest, and attorney fees and costs." *Id.*, Ex. A, ¶ 6. *See, e.g.*, *Zheng v. N.J. Great Wall, LLC*, No. 21-16350, 2023 WL 4087088, at *4 (D.N.J. June 20, 2023) (approving a release provision in an FLSA settlement that was "appropriately narrowed . . . to encompass only unpaid wage claims related to the causes of action alleged in the Complaint, ensuring it is not unduly restrictive"); *Clarke v. Flik Int'l Corp.*, No. 17-1915, 2020 WL 747067, at *4 (D.N.J. Feb. 14, 2020) (approving a settlement agreement containing a release provision that was "properly tailored" to the issue of the plaintiffs' wages or hours during their employment with the defendants); *Kutz v. Cargill Cocoa & Chocolate, Inc.*, No. 19-0176, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019) (approving the release language in an FLSA settlement agreement because the language was "strictly limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted . . . 'based upon the facts alleged in the Complaint or the Amended Complaint'").

### D. Conclusion as to the Fairness of the Settlement

Under the three factors designated for the assessment of an FLSA settlement, the Court finds that the settlement here is fair and reasonable. A bona fide dispute exists between the parties, the terms of the agreement are fair and reasonable to the employee Plaintiffs, and the terms of the Settlement Agreement will not frustrate the implementation of the FLSA. Accordingly, the Court will approve the settlement.

## REASONABLENESS OF ATTORNEYS' FEES

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the reviewing court may "allow a reasonable attorney's fee to be paid by the defendant . . . ." 29 U.S.C. § 216(b). "To

determine the reasonableness of an attorneys' fee award in an FLSA action, judicial review is required 'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Morales*, 2021 WL 5864061, at *2 (quoting *Brumley*, 2012 WL 1019337, at *9).

In the Third Circuit, courts evaluate whether an attorney's fee is reasonable using either the percentage-of-recovery approach or the lodestar formula. *See, e.g.*, *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 780 (E.D. Pa. 2016) (noting the use of the percentage-of-recovery method); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001) (noting the use of the lodestar formula). However, the percentage-of-recovery approach is the prevailing method used in the Third Circuit for wage-and-hour cases. *Bredbenner*, 2011 WL 1344745, at *19. "Under the percentage-of-recovery method, courts award attorneys' fees as a percentage of the total fund recovered. While fee awards have ranged from nineteen (19) percent to forty-five (45) percent of a total settlement in the Third Circuit, fee awards around thirty (30) percent are routinely found reasonable." *Morales*, 2021 WL 5864061, at *2 (citations omitted); *see also Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (noting that in the Third Circuit, "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20-45% (citing exemplary cases)).

Nonetheless, to ensure the reasonableness of the requested attorney's fees, a court should also "cross-check" its fee calculation against the lodestar method. *Payton-Fernandez v. Burlington Stores, Inc.,* 671 F. Supp. 3d 512, 533 (D.N.J. 2023) (citing *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner*, 260 F.3d at 177. Then, "[t]he lodestar cross[-]check is performed by calculating the 'lodestar multiplier,' which is determined

by dividing the requested fee award by the lodestar." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 766 (E.D. Pa. 2016) (citing *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)).

Applying the percentage-of-recovery method first, the Court finds that Plaintiffs' counsel's requested attorneys' fees are reasonable. The total settlement amount is $500,000, and Plaintiffs' counsel seeks attorneys' fees in the amount of $164,833.98, constituting approximately 33% of the total settlement. This range falls precisely within that which has been deemed acceptable.

Pursuant to the lodestar cross-check, Plaintiffs' attorneys' billing reflects that counsel spent 551.80 hours litigating this case, including investigating the claims, serving process, meeting with clients, preparing discovery, engaging in settlement discussions, attending court conferences, and beginning depositions. Qu Aff., Ex. D (Attorney Invoice). While the hourly rate varies from $200 for paralegal time, $275 for law clerk time, $325 for associate attorney time, and $450 per hour for principal attorney time, the majority of work was billed at a rate of $325 per hour.[3] Pls.' Br. 12-15. Courts in this district have found similar rates to be reasonable in FLSA cases. *See, e.g.*, *Lurty v. 2001 Towing & Recovery, Inc.*, No. 18-6302, 2019 WL 3297473, at *5 (D.N.J. July 23, 2019) (finding attorneys' hourly rates of $450 and $400 in FLSA case to be reasonable); *Santiago v. Lucky Lodi Buffet Inc.*, No. 15-6147, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (finding attorneys' hourly rates of $450 and $375 to be reasonable); *see also Zheng* 2023 WL 4087088, at *5 (finding a law clerk's hourly rate of $275 and a paralegal's hourly rate of $175 to be reasonable). Calculating the lodestar amount using the total hours times the billing rates equals $174,921.17, an amount higher than the actual fees requested, yielding a lodestar multiplier of less than one. *See Carroll v. Stettler*, No. 10-2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011) ("A lodestar

---

[3] Only 7.1 hours of the total number of hours was billed at the $450 per hour rate for Jian Hang, the principal of Hang & Associates, PLLC. The remainder of the time was billed at a rate of $325 per hour or below.

multiplier of less than one reveals that the fee request constitutes only a fraction of the work that the attorneys billed and is within the accepted range in the Third Circuit.").

Having thoroughly considered the requested attorneys' fees under the percentage-of-recovery approach and having cross-checked the requested fee against the lodestar amount, the Court finds that the requested fee is fair, reasonable, and commensurate with the amount of work counsel expended on this litigation. Accordingly, the Court will approve attorneys' fees in the amount of $164,833.98.

## REASONABLENESS OF COSTS

Along with attorneys' fees, 29 U.S.C. § 216(b) allows for the "costs of the action" to be paid by the defendant in an FLSA case. Courts within the Third Circuit have approved costs including complaint filing fees, subpoena invoices, mileage and parking, mediation fees, and calling campaigns. *Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014); *see also Morales*, 2021 WL 5864061, at *3 (approving a request for costs including the filing fee, service of process, and mediation fees).

Here, Plaintiffs' counsel seeks reimbursement of $5,496.42 in costs, consisting of charges for filing, service, copying, transcription, and Uber fees. Pl.'s Br. 2; Qu Aff., Ex. C (Invoices); Qu Suppl. Decl. ¶¶ 2-3 and Ex. A (Invoices). These categories of costs are typical in FLSA cases, and the Court finds that the amounts billed are not excessive. *Id.* The Court, therefore, will approve a reimbursement of $5,496.42 in costs.

## CONCLUSION

For the foregoing reasons, the Court finds that the proposed Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Plaintiffs' counsel's request for attorneys' fees in the amount of $164,833.98 is appropriate, and $5,496.42 of Plaintiffs'

15

counsel's requests for costs is reasonable and supported by itemized receipts. Accordingly, the Motion for Settlement is **GRANTED** and the settlement is **APPROVED**. An appropriate Order follows.

s/Elizabeth A. Pascal  
ELIZABETH A. PASCAL  
United States Magistrate Judge